UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 19-cr-10479-DJC |
| ) | |
| BRUCE SARTWELL, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S DETENTION ORDER**

**I.    BACKGROUND**

On November 7, 2019, a detention and probable cause hearing was held in this case before Magistrate M. Page Kelley.  At the conclusion of the hearing, Magistrate Judge Kelley invited the parties to submit supplemental briefings which they did on November 12 and 13, 2019.[1]  On November 26, 2019, the Magistrate Judge issued a written order of detention pending trial. [D.E. 11]. This Court should not disturb the order of the Magistrate Judge.  On December 23, 2019, the defendant filed a motion for review of the detention order and request for immediate release on conditions.  [D.E. 17.] The government, in turn, files this opposition.

The government's position is simple – the evidence[2] before Magistrate Judge Kelley established that release of Bruce Sartwell ("Sartwell") under any circumstances presents a risk of danger to the community.  Because the government has established by clear and convincing evidence that there are no conditions or combination of conditions that can eliminate that risk, the Detention Order should not be revoked and Sartwell should remain detained pending trial.

---

[1] The government invites the District Court to review its supplemental argument related to its motion for detention and incorporates it by reference herein. [D.E. 9].

[2] The government further invites the District Court to review the transcript [D.E. 18] and exhibits from the detention hearing and incorporates them by reference herein.

## II.     THE GOVERNMENT'S CASE AND DETENTION HEARING

On October 19, 2019, the defendant was charged by criminal complaint with one count of unlawful possession of an unregistered firearm, in violation of 26 U.S.C § 5861(d). That same date, the government moved for detention on the following two grounds:

- 18 U.S.C. § 3142(f)(2)(A): serious risk of flight; and,

- 18 U.S.C. 3142(f)(1)(E): any felony that is not otherwise a crime of violence…that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon.[3]

At the detention hearing, the government called HSI Special Agent (SA) Michael Nagle and also introduced nineteen (19) exhibits, including the criminal complaint affidavit of SA Michael Belli. A copy of the affidavit is attached hereto as Exhibit 1. At the hearing, Special Agent Nagle provided the following overview of the case against Sartwell. Bruce "Monster" Sartwell, the self-proclaimed President of the East Bridgewater/Brockton chapter of the Outlaws Motorcycle Club, is a convicted felon. He came to the attention of law enforcement in early October when an international mail parcel from China labeled as a "fuel filter" was addressed to him at his East Bridgewater residence. The package contained a silencer, as defined by 18 U.S.C. § 921(a)(24). A firearm silencer can only be used in conjunction with a real firearm to muffle or silence the noise of the firearm when fired. This package was one of 65 addressed to him from Asia since December 2019, many of which appeared suspicious and/or were connected to firearms. All of this led agents to believe that the defendant was unlawfully importing items, including firearms, and as a result, the Court issued a search warrant for his residence.

Agents executed the search warrant on October 30, 2019 after Sartwell accepted the delivery of the package containing the silencer and two other packages. In one of the other

---

[3] In the defendant's written filing for the District Judge and in argument, he claims that the government improperly moved under, and the Magistrate Judge found, a presumption of detention pursuant to 18 U.S.C. § 3142(e). This is not correct. In fact, at the defendant's arraignment on January 3, 2020, Magistrate Judge Kelley clarified this in open court and stated that she never made findings pursuant to a presumption of detention. Instead, her order of detention was based on clear and convincing evidence that the defendant posed a danger to the community. Thus, the defendant's arguments claiming the Magistrate Judge erred in finding a presumption of detention are unsupported by the record.

packages, which was addressed to Sartwell, agents found a recently ordered level 3 tactical/military grade body armor plate. Sartwell, post-*Miranda*, denied knowing that the package labeled as "fuel filter" contained a firearm silencer, and instead claimed that it was for an Airsoft rifle. He did, however, admit to purchasing it online. He told law enforcement that the last time he handled a firearm was twenty-five years ago.

During the course of the search warrant execution, agents seized a number of items from the backyard, garage, basement and defendant's bedroom, all of which are fully outlined in the complaint affidavit (attached hereto as Exhibit 1), and in exhibits presented to the Magistrate Judge at the detention hearing, including, ATF reports (marked at the detention hearing as Government's Exhibit "G.E." 9) and a property inventory (G.E. 17).

In the detached garage, agents observed over a dozen Airsoft rifles hoisted on the wall, many with foam suppressors, and not silencers as defined by 18 U.S.C. § 921(a)(24), affixed to them. Outlaws MC banners and other related items and a "Monster Way" street sign decorated the walls. In the garage's workshop area, agents located a free standing L-shaped bar. Sartwell told agents that he recently completed building this bar and named it "Monster Bar." With the assistance of a K-9, agents found hidden compartments[4] within the bar containing a completed AR-15 style rifle without any serial numbers or manufacturing markings (a/k/a "ghost gun"), two thirty round magazines, blank guns that have the appearances of real firearms, an AR-15 jig kit, other AR-15 style firearm parts and milling plates. In and around the bar were tools and parts used to build AR-15 style rifles, including an additional butt stock,[5] AR rifle cleaning pad, buffer spring and tube, vice, drill press, drill bits, dremel kit, and water cooled mini air suppressor.

---

[4] A photograph depicting the contents of one of Monster Bar's hidden compartments, which includes the AR-15 style rifle, two large capacity magazines and blank guns, is attached here as Exhibit 2 (marked at the detention hearing as G.E. 5). A photograph of the AR-15 style rifle found in that hidden compartment is attached here as Exhibit 3 (marked at detention hearing as G.E. 8).

[5] A butt stock – or shoulder stock – is the back portion of a long gun (like an AR-15 rifle) that presses up against someone's shoulder. It provides structural support on assault rifles and absorbs some of the recoil when the gun is fired.

Hidden beneath the staircase garage, agents located a "How to" guide[6] to all the parts needed and steps to be followed to assemble an AR-15 style weapon. In yet another hidden compartment inside a small bureau, agents recovered an additional silencer and silencer parts.[7]

Again with the assistance of a K-9, agents found a hidden compartment inside the nightstand in the master bedroom. In the bedside table, agents located a box of 153 rounds of high velocity ammunition, tasers, taser cartridges, flare guns, brass knuckles, two magazines, and twenty knives. The high velocity ammunition found in the hidden compartment in the bedroom was compatible with the AR-15 style rifle found in the hidden compartment in the garage bar. Also in the upstairs of the home, agents located, but did not seize, black powder rifles and pistols.

In the basement, agents physically moved a sliding floor length mirror in order to locate a secret room in the basement. Hidden behind a dresser was a peg board which hid a secret wall safe containing additional firearm silencer parts and baffles, an instruction book on how to mill out an AR-15 weapon, and a drill guide for various types of assault rifle weapons.

Agents conducted a preview of the computer showed that in the week of October 13, 2019, that is, six days before law enforcement intercepted the international parcel containing a firearm silencer destined to Sartwell, an individual with the user ID of "monst" conducted internet searches for bump stocks.[8] These searches and search terms included how to build homemade bump stocks, downloads for 3D bump stock plans, and articles related to both the Las Vegas shooting and how to make a gun fire like a machine gun.

---

[6] This AR-15 guide was marked as exhibit 10A-10C at the detention hearing and was attached to the government's motion for detention as exhibit 1. [D.E. 9]. The government incorporates this exhibit by reference herein.

[7] The silencer and silencer parts were examined by ATF and determined to be silencers and silencer parts (and not air rifle foam suppressors as argued by the defendant) pursuant to 18 U.S.C. § 921(a)(24). *See* G.E. 9 from the detention hearing.

[8] The photograph associated with the individual with a user ID of "monst" depicted Bruce "Monster" Sartwell. An enhanced butt stock that allows for quicker, more rapid firing is commonly known as "bump stock." Special Agent Nagle testified at the detention hearing that bump stocks cannot be used on Airsoft rifles.

An ATF special agent performed a test fire of the seized AR-15 style rifle utilizing one of the two thirty round magazines found hidden in the defendant's bar. Agents used three rounds of the same caliber ammunition found within the hidden compartment in the defendant's bedside night table. The ATF agent conducted a successful test fire of the AR-15 weapon which functioned as designed. *See* G.E. 9 from Detention Hearing. The barrel length was 8 and 7/8 inches and overall length was 24 and 3/8 inches thus meeting the legal definition of firearm under Title 26.

Pretrial services concluded that the defendant should be detained because he posed a risk of nonappearance due to his prior mental health, substance abuse and criminal histories. More significantly, pretrial services concluded that the defendant posed a danger to the community because of the nature of the instant offense, specifically, the weapons viewed in and seized from the defendant's home, the materials and equipment used to assist in making the firearms, the ammunition and the hidden compartments that contained these items. Given these factors, pretrial services recommended that there are no conditions or combination of conditions that could mitigate the risk of danger and reasonably assure the safety of the community if the defendant is released. Although Magistrate Judge Kelley found that the government had not shown by a preponderance of the evidence that Sartwell poses a risk of flight, she did find that the government established by clear and convincing evidence that he posed a danger to the community. The Magistrate Judge adopted that recommendation ordering the defendant detained pending trial pursuant to 18 U.S.C. 3142(f)(1)(E).

### III. APPLICABLE LEGAL PRINCIPLES

In *United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990), the First Circuit held that a district judge must conduct a "*de novo* review" of a contested detention order issued by a magistrate judge. 922 F.2d at 883, n. 4.  However, requiring the district court to conduct a *de novo* review does not mean that it must conduct a *de novo* hearing.  It also does not mean that the district court must disregard the magistrate's fact finding and the inferences to be drawn therefrom.  *Tortora* mandates that the district court must instead make an independent

5

determination of the detention decision, unconstrained by the limits of the magistrate's conclusions or the record established in the original detention hearing.

In *United States v. Koenia*, 912 F.2d 1190 (9th Cir. 1990), the court properly summarized the district court's power and obligation in reviewing a magistrate judge's detention order:

> [t]he district court ... (need not) start over in every case, and proceed as if the magistrate's decision and findings did not exist. The district court erred, however, in ruling that it could review the magistrate's findings under a "clearly erroneous" standard of deference. It should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate. The point is that the district court is to make its own "de novo" determinations of facts, whether different from or an adoption of the findings of the magistrate.

Id. at 1193.[9]

In determining whether suitable release conditions exist to release a defendant, the judicial officer must take into account the following: (1) the nature and circumstances of the offense charged including whether the offense is a crime of violence, or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the accused, including family ties, physical and mental condition, employment and other factors; and (4) the nature and seriousness of the danger posed by the person's release. *See* 18 U.S.C. § 3142(g). Each of these factors must be weighed, and the decision on whether to release is an individualized one. *Patriarca*, 948 F.2d at 794. Magistrate Judge Kelley took all of these factors into account and as expressed in her sound reasoning in her detention order. This Court should not disturb that order, but instead should deny the defendant's motion on the papers.

---

[9] Other cases cited by *Tortora* are to the same effect. *See, e.g.*, *United States v. Hurtado*, 779 F.2d 1467,1480(11th Cir. 1985) (district court must conduct an independent review); *United States v. Maull*, 773 F.2d 1479, 1481-2 (8th Cir. 1985) (district court to conduct de novo review of detention issue, and could hold hearing; court also empowered to accept stipulated facts in such a de novo proceeding); *United States v. Delker*, 757 F.2d 1390, 1393-94 & n. 3 (3d Cir. 1985) (district court required to make independent review of magistrate's detention order, although "[i]n most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate" and "may in an informed exercise of discretion, determine whether additional evidence is desirable" beyond what was presented to the magistrate).

## IV. ARGUMENT

### A. Danger to the Community

Quite simply – Sartwell presents a danger to the community based upon the nature and seriousness of the charges, the strength of the evidence, his criminal history and his access to and use of weapons. The evidence shows that the defendant imported a firearm silencer, created an assault rifle in his own home, and had the tools and parts to create another assault rifle. Once created, this assault rifle had no manufacturing marks nor serial numbers and law enforcement was unable to detect it. In addition to the assault rifle within a hidden compartment in a bar in his garage that he built, the defendant had military grade body armor, over 150 rounds of high velocity ammunition, large capacity magazines and other weapons (both legal and illegal) hidden throughout his home. A person with a user ID associated with the defendant's name had recently conducted internet searches for bump stocks and how to make a gun fire like a machine. The defendant's garage displayed over two dozen airsoft weapons that would intimidate average civilians. However, hidden throughout his home in secret rooms, compartments, hides, and safes were the weapons, both legal and illegal, designed to kill and the tools used to create them. The items found in the defendant's home and over 60 suspicious packages imported directly to him over the last year show that the defendant willingly uses sophisticated means to avoid detection and is capable of jeopardizing community safety within his very own residence.

Under the Bail Reform Act, the definition of "danger to the community" extends beyond mere physical violence. *Patriaca*, at 792 n.2; *Tortora*, at 884 (citing S.Rep.No. 225, 98th Cong., 2d Sess. 4-12, reprinted in 1984 U.S. Code Cong. & Admin. News at 3182, 3187-95). "The Congress was apparently concerned with the safety not only 'of a particular identifiable individual, perhaps a victim or witness,' but also of the community as a whole." *United States v. Delker*, 757 F.2d 1390, 1393 (3rd Cir. 1985).

Despite the defendant's arguments to the contrary in his motion for review of the Magistrate Judge's detention order, this was not merely a case involving the simple possession of

an unregistered firearm, in violation of Title 26, United States Code 5861(d). As the Magistrate Judge aptly stated as one of her reasons for detention:

> If Mr. Sartwell had simply illegally possessed a firearm, the court might find that release was appropriate. But here, the firearm, which was an AR-15, a gun that had been used in mass shootings, was stored in a hidden compartment in a bar that Mr. Sartwell had built, and he also had large capacity magazines, 153 rounds of high velocity ammunition, two silencers and body armor. These facts are very concerning and suggest that Mr. Sartwell, who is not permitted to possess firearms, was preparing for some violent act: otherwise, what was he doing with these items?

D.E. 11.

**B. Releasing the Defendant to his wife's custody to the same home he was importing firearm and firearm parts, and researching, assembling, building, and discretely storing firearms, large capacity magazines, ammunition and other weapons will not assure the safety of the community**

The defendant argues that if he were to live at home (that is, the same home that he was building assault rifles and storing additional firearms and weapons) that any danger he poses would be ameliorated by his release on the following conditions: 1) to the custody of his wife; 2) on home detention with a curfew and electronic monitoring; 3) maintain employment at the business owned by him and his wife; 4) an unsecured bond of $10,000 co-signed by his wife; 5) surrender passport; and, 6) "Mr. Sartwell's Airsoft handguns and rifles, as well as all "prop" guns and starter pistols have been removed from his home;[10] he will refrain from possessing any item of this type as well as any firearm, destructive device or other dangerous weapon." As the government argued at the detention hearing and in its written filing in support of a motion for detention, these conditions of release are inadequate to assure the safety of the community.

For starters, the defendant's proposed conditions of surrendering his passport,[11] subjecting himself to electronic monitoring and a curfew, and subjecting himself and wife to an

---

[10] As noted in the government's prior filing and on the record at the detention hearing, law enforcement did not seize the airsoft rifles, twenty knives, tasers, brass knuckles, blank guns, black powder firearms and rifles, or flare guns. Thus, the government is unable to confirm whether these items have in fact been removed from the home.

[11] The defendant surrendered his passport to pretrial services prior to the Magistrate Judge issuing her order of detention.

unsecured bond go more to assuring the presence of a defendant who poses a flight risk than to assuring the community's safety. *See generally*, *United States v. Patriarca*, 948 F.2d 789, 793-94 (1st Cir. 1991). Additionally, electronic monitoring "cannot be expected to prevent a defendant from committing crimes or deter him from participating in felonious activity within monitoring radius." *Tortora*, 922 F.2d at 887. The defendant committed his criminal act in the very home to where he asked the Magistrate Judge, and now this Court, to release him. Imposing a curfew and GPS does not assure that he would not continue building assault rifles in his garage, importing firearm and firearm parts to his home, or conducting internet searches related to how to make a gun firearm like a machine gun.

The remaining proposed conditions include: working at his own business, being released to his wife's custody and refraining from possessing any "[prop gun, starter pistol, Airsoft type weapons], as well as any firearm, destructive device or other dangerous weapon." Each of these remaining conditions – except for asking that his wife to serve as a third-party custodian – are the exact conditions that he was on when he actively committed the charged crime. All of the defendant's proposed conditions, including an agreement to refrain from possessing any kind of weapon, were carefully considered by Magistrate Judge Kelley when she ordered the defendant detained. In fact, at the detention hearing, defense counsel asked that the Court direct pretrial services to make a home visit to determine if the defendant's home is a suitable place for him to be released. In response, Magistrate Judge Kelley stated: "So I will just say for probation to ever be going into a home that, just so bristling with weapons, whether they're airsoft or whatever, is really not acceptable…" [D.E. 18, Transcript of Detention Hearing, p. 70-71].

In reality, the record is bereft of information as to how Sartwell would be supervised if he went back to the same place where he researched, ordered parts for, built, hid, and planned to build at least one additional, assault rifle. It is also the same home that he was hiding large capacity magazines and over one hundred and fifty rounds of high velocity ammunition compatible with the assault rifle. And, it is the same home where hidden rooms, compartments and safes hid silencers, silencer parts and other weapons. The defendant was already spending

many hours of the day with his wife because they were working together at their jointly owned business and living together with their family. But yet, he was still able to commit the charged crime in their shared residence. "[T]he Bail Reform Act…does not require release of a dangerous defendant if the only combination of conditions that would reasonably assure societal safety consists of heroic measures beyond those which can fairly be said to have been within Congress's contemplation." *Tortora*, at 887. The Magistrate Judge correctly found that the defendant posed a danger to the community. Releasing him to the home where he was conducting his criminal activity is insufficient to alleviate that danger. This Court should not disturb Magistrate Judge Kelley's carefully reasoned detention order.

V. **CONCLUSION**

Each of the factors enumerated in 18 U.S.C. § 3142(g) weighs in favor of detention.  The nature and circumstances of the charges are extremely serious, the penalties are severe, and the evidence is strong against Sartwell.  Based on the foregoing, the government requests that this Court deny on the papers the defendant's appeal of the Magistrate Judge's November 26, 2019 Order on Detention Pending Trial and continue the order that Sartwell be detained pending trial.

> Respectfully submitted,
> ANDREW E. LELLING
> United States Attorney
>
> By: */s/ Lindsey E. Weinstein*
> Lindsey E. Weinstein
> Assistant U.S. Attorney

Dated: January 9, 2020

**CERTIFICATE OF SERVICE**

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

> */s/ Lindsey E. Weinstein*
> Lindsey E. Weinstein
> Assistant United States Attorney

Dated: January 9, 2020