UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                        )       No. 19-cr-10479-DJC<br>)<br>BRUCE SARTWELL,                  )<br>)<br>        Defendant.              ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, through its attorneys, Acting United States Attorney Nathaniel R. Mendell and Assistant United States Attorneys Lindsey E. Weinstein and Kenneth G. Shine, hereby submits its Sentencing Memorandum for Bruce Sartwell ("Sartwell") currently scheduled for sentencing on March 31, 2021. Given the nature and circumstances of Sartwell's offenses, his history and characteristics, and the factors set forth in 18 U.S.C. § 3553(a)(2), a sentence of 37 months' imprisonment, three years of supervised release, and a mandatory special assessment of $100 is the minimum sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553.

I.      Procedural Background

On July 14, 2020, Sartwell pleaded guilty to a one-count Indictment charging him with possession of an unregistered firearm, in violation of 26 U.S.C.§ 5861(d). Sartwell is currently in the custody of the United States Marshals Services.

II.     Offense Conduct

The facts as set forth in the Presentence Report ("PSR") prepared by the United States Probation Department ("Probation") are largely uncontested. PSR ¶¶ 6-22. On October 30, 2019, Sartwell's home was the subject of a federal search warrant executed by members of Homeland Security Investigations ("HSI") following law enforcement's interception of a parcel

from China containing a firearm silencer addressed to Sartwell. This parcel, labeled as "fuel filter" was one of many suspicious packages shipped from Asia to Sartwell's residence, either with innocuous cargo descriptions or ones blatantly tied to firearms. PSR ¶ 9-10.

During the execution of the search warrant, law enforcement located a hide in Sartwell's garage and recovered, amongst other things, a homemade AR-15 styled rifle and two thirty round magazines. Also in the garage, agents located tools and parts to build AR-15 style rifles, not limited to, an additional butt stock (which, presumably was to be used to create an additional assault rifle) and a "How to" guide for all the parts needed and steps to assemble AR-15s. PSR ¶ 13. During the execution of the warrant, law enforcement observed, mounted on the garage's wall, dozens of Airsoft rifles.  Additionally, from other hidden areas, law enforcement located and secured an additional firearm silencer and additional baffles. PSR ¶¶13-14. In a discretely located wall safe in a hidden room in the basement, agents recovered an additional six baffles. PSR ¶16.  From a hidden compartment in the master bedroom nightstand, agents recovered a box of over 150 rounds of high velocity ammunition compatible with the large capacity magazines and the AR-15 styled rifle. PSR ¶ 15.

III.   Application of Guidelines Calculation

For the reasons set forth in the PSR prepared by Probation, Sartwell's base offense level is 20 because the offense involved a semiautomatic firearm, that is an AR-15 style firearm with a barrel length of less than sixteen inches, that is capable of accepting a large capacity magazine or is a firearm, as defined as 26 U.S.C. § 5845(a). USSG § 2K2.1(a)(4)(B)(i)(I). The Government agrees with Probation that he is subject to a 4-point increase because the offense involved a total of 8 to 24 firearms, not limited to the semiautomatic AR-15 style firearm, two silencers, and at least fourteen baffles/silencer parts, which were deemed in and of themselves "firearm

silencers," "firearms," and "silencers" as defined under federal law. USSG § 2K2.1(b)(1)(B). As set forth in the PSR, Sartwell should receive a three-level downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1. Thus, his total offense level is 21. The Government agrees that the corresponding Guidelines Sentencing Range, at Criminal History Category I, is 37-46 months.

    A.  Application of USSG § 2K2.1(b)(1)(B)

The government agrees with Probation that the preponderance of the evidence supports a four-point offense level increase pursuant to USSG § 2K2.1(b)(1)(B). During an evidentiary sentencing hearing held on February 25, 2021, Firearms Enforcement Officer James Barlow opined that the two silencers and at least fourteen baffles[1] met the legal definitions of firearm or firearm silencer as defined under 18 U.S.C.§§ 921(a)(3)(C), 921(a)(24) and 26 U.S.C.§ 5845(a)(7). The silencer recovered the international mail parcel labeled "fuel filter" addressed to Sartwell, is a "firearm" and "silencer" and in fact is comparable to the design of a U.S. Patent. *See* G.E. 2A at USAO 143, 172-180. The item recovered from the hidden compartment in the bureau in the garage, too, was deemed a silencer because it "is a combination of parts designed and intended for use in assembling or fabricating a firearm silencer." *Id* at 145. Each of the eight baffles found in the same hidden compartment in the garage bureau and the six

---

[1] The fourteen baffles (Exhibits 3 and 4 of the report) include the eight packaged/stacked together and found inside the hidden compartment in the bureau in the garage and the six found in the wall safe in the hidden mirror room. Per Barlow's report, contained within the silencer in the hidden compartment in the garage were two end caps and one flashlight cap, neither of which are normally regulated by the Gun Control Act (GCA) or the National Firearm Act (NFA) (exhibits 2b, 2c, and 2d). However, "if intent were demonstrated to use [these items] as a part for assembly or fabrication of a firearm silencer, it would be subject to regulation by the GCA and NFA." Government's Exhibit [G.E.] 2 at USAO 146. That these items were located inside a firearm silencer demonstrates the necessary intent to subject them to regulation; however, the Court need not reach such a conclusion here because it will not change the guideline analysis.

baffles found in the hidden wall safe in the mirror room, too, were parts "intended only for use in the assembly or fabrication of a firearm silencer" and "in and of [themselves are] firearm silencers as defined." *Id*. at 146, 147.[2] Thus, the defendant's possession of the AR-15 styled rifle, the two silencers and fourteen baffles place him into the range of 8-24 firearms and subjects him to a four-level increase.

The defendant argues, however, that he intended to use the two silencers on his Airsofts and not on his homemade AR-15; therefore, this Court should not include the silencers in the firearm calculation. His reliance on *United States v. Crooker* 608 F.3d 94 (1st Cir. 2010) to support his position is misplaced. In *Crooker*, the silencer was created for an airgun and required modification to fit a firearm and could not be used on *any* ordinary firearm absent an adapter and likely "dangerous" testing conditions. *Id*. at 96 (emphasis added). On these unusual facts, the First Circuit held that the evidence was insufficient to support that Crooker intended the device to function as a firearm silencer because the device was not so designed as one. *Id.* at 99. In so doing, the court in *Crooker* expressly limited its holding to cases where the device was not designed to be used as a silencer for a firearm. *Id*. at 99.

Unlike in *Crooker*, the silencers recovered at Sartwell's home were firearm silencers, not Airsoft ones. Officer Barlow reached his conclusion when he considered the design, purpose and actual function of both items. While Officer Barlow indeed used a 1/2x28 threaded adapter to

---

[2] Sartwell argues that the silencer recovered from the garage and some of the baffles were incomplete or not tested in conjunction with actual firearms. This argument lacks merit. Operability is not a necessary component of a silencer. *See generally United States v. Carter*, 465 F.3d 658, 667 (6th Cir. 2006); *see also United States v. Rogers*, 270 F.3d 1076, 108 1 (7th Cir. 2001) (dictum) (jury instruction that conviction depended not on whether the screw-on tube actually worked as a silencer but on whether it was intended to work as a silencer "tracks the statutory definition") and *United States v. Syverson*, 90 F.3d 227, 232 (7th Cir. 1996) (rejecting appellants argument that statute only prohibits silencers that work as "contrary to the plain language of the statute" and corresponding definition of silencers).

test one silencer on his testing pistol, he testified that the silencer in its current state and without modification or a use of an adapter would fit onto AR-15 rifles because AR-15 rifles have 1/2x28 threaded barrels. He further testified that the two silencers he examined would likely require modifications to fit on the standard Airsoft gun.

Regardless, the defendant's intended use of the silencers and baffles is not an element that the government needs to prove by preponderance of the evidence.[3] Instead, the government needs only to show that Sartwell "knew the features of his weapon that brought it within the scope of the Act." *Staples v. United States*, 511 U.S. 600, 619 (1994) and 26 U.S.C. § 5861(d). Thus, the government needs to prove that Sartwell knew the object was a "device for silencing, muffling or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabrication a firearm silencer…and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24). "[K]nowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon." *Staples*, 511 U.S. at 616 n.11; *see also Rogers v. United States*, 522 U.S. 252 (1998) (holding that the mens rea element of a violation of §5861(d) requires that the government prove that a defendant had knowledge that he was in possession of an item that possessed the unique characteristics, not that the defendant knew that the possession was unlawful).

---

[3] Few cases have addressed the possessor's "intent" as it relates to silencers. *See, e.g., United States v. Sagginario*, 00-CR-806, 2001 WL 185051, *4 (E.D.N.Y. Feb. 16, 2001) (unpublished) (holding that an individual's intent to use a silencer only with toy paint ball guns is irrelevant; it neither strips the silencer of its character nor constitutes a defense to the charge).

Here, the government has proven by preponderance of the evidence that Sartwell knew the intended use of the two silencers[4] and fourteen baffles. For starters, Sartwell proclaims, and the evidence indeed supports, that he is a gun enthusiast. Sartwell previously possessed a license to carry firearms and despite the expiration of this license in 1999, he had five firearms still registered to him at the time of the search warrant execution. He owns a plethora of black powder rifles and handguns, blank guns and Airsofts. He himself made at least one assault rifle and possessed tools and parts to create additional ones. This is not an individual who is unfamiliar with firearms, silencers and silencer parts or their respective intended purposes.

Furthermore, while some suppressors were affixed to the Airsofts that Sartwell prominently displayed, a silencer and fourteen baffles were recovered from hidden rooms, compartments, and safes within his home. The silencer and eight baffles recovered from the false bottom bureau drawer in the garage and the six baffles recovered from the hidden wall safe in the secret mirror room are not inherently dangerous absent them being used in conjunction with a portable firearm. That said, they are inherently illegal and the fact that Sartwell hid these items in the manner he did shows that he was aware of their intended purpose. Thus, the evidence sufficiently establishes that Sartwell knew these items fell within the scope of the Act and the four-level enhancement should apply.

IV.     18 U.S.C. § 3553(a)

Consideration of the factors set forth in 18 U.S.C.§ 3553(a) demonstrates that a sentence of 37 months' incarceration is appropriate. The seriousness of Sartwell's crime cannot be

---

[4] Even if this Court were to find that Sartwell did not know the intended use of the silencer imported from China because of his self-serving statements that he planned to use it for an Airsoft, Sartwell's possession of the remaining silencer and fourteen baffles, and knowledge of their intended purposes, subjects him to the four-level increase.

overstated. Sartwell possessed a homemade assault rifle, two thirty round magazines and over 150 rounds of high velocity ammunition compatible with the rifle. He received a package from China containing an additional silencer and had hidden in his home an additional silencer and silencer parts designed to fit with the assault rifle that he created. Sartwell argues that the intended use of these items was to either expand on his airsoft and antique and replica gun collection or to protect his family "in the event of some unexpected emergency."  The evidence, though, suggests otherwise. The Airsofts and many of the black powder guns were prominently displayed throughout the home. The silencer and baffles, while not in and of themselves inherently dangerous, they were, like the AR-15 styled rifle, inherently illegal. Sartwell knew this; therefore, he hid them. Additionally, Sartwell's self-serving justification that he possessed these items to protect his family "in the event of some unexpected emergency" also falls flat given that he stored his AR-15 styled rifle and large capacity magazines in his detached garage which was a completely different location than the ammunition in his bedside table hide.

      In actuality, the uncontested evidence suggests a more nefarious purpose. Within Sartwell's garage and hidden compartments and rooms were additional tools and parts to create more assault rifles. Body armor, designed to sustain multiple shots of high velocity, 5.56 ammunition, was delivered in a separate package on the day of the search warrant execution. Perhaps, most concerning of all, six days before law enforcement intercepted the international mail parcel containing the firearm silencer, Sartwell[5] conducted internet searches for bump stocks, including how to build a homemade bump stock, downloads for 3D bump stock plans, and articles related to both the Las Vegas mass shooting and how to make a gun firearm like a

---

[5] Internet searches were conducted on a computer by a user with a photograph depicting Sartwell with a username of "Monst," an abbreviation for Sartwell's Motorcycle Club moniker "Monster."

machine gun. The government need not state the obvious grave concerns regarding the discovery of a homemade assault rifle frequently used in mass shootings from a home where internet searches were recently conducted about how to easily mimic the same. While Sartwell has not outwardly stated his intended use or plan for the AR-15 styled rifle, two thirty round magazines, 153 rounds of ammunition, body armor, silencers and silencer parts, his ever-developing stockpile of dangerous items and internet searches about mass shootings speaks volumes.

     Sartwell's history and characteristics provide little excuse or explanation for his criminal activity. His criminal record shows a history of assaultive and threatening charges many of which involve allegations where he referenced his membership to the Outlaws in a threatening manner. Sartwell comes from a supportive family and owns a home and business. He does not suffer from drug, alcohol or mental health issues that would prevent him from appreciating the wrongfulness of his actions. Sartwell knows the difference between right and wrong, legal and illegal, and safe and dangerous. Sartwell knew that creating and maintaining a homemade AR-15 with two 30 round magazines and over 150 rounds of high velocity bullets and possessing the tools and parts to create additional assault rifles threatened the safety of his community.  His sentence should reflect that such behaviors and livelihood will not be tolerated.

V.  Conclusion

For the reasons set forth herein, a sentence of 37 months' imprisonment, to be followed by three years of supervised release, is a sufficient sentence, not greater than necessary, and will adequately punish Sartwell for his criminal activity, promote respect for the rule of law, and send a powerful message of general deterrence to the public that this type of behavior will not and cannot be tolerated. This is a significant sentence, but one dictated by Sartwell's actions and history.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:

/s/ Lindsey E. Weinstein
LINDSEY E. WEINSTEIN
KENNETH G. SHINE
ASSISTANT UNITED STATES ATTORNEYS

Dated: March 26, 2021

**CERTIFICATE OF SERVICE**

I, Lindsey E. Weinstein, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Lindsey E. Weinstein
LINDSEY E. WEINSTEIN